**BLOOMBERG v ROACH, Recr**

Ohio Appeals, 5th Dist, Stark Co

Decided March 20, 1930

Black, McCuskey, Ruff & Souers, Canton, and A. E. Bernsteen, Cleveland, for plaintiff in error.

Amerman & Mills, Canton, for defendant in error.

SHERICK, J.

It is well settled that the power to punish for contempt is inherent in all courts, for such power is necessarily incident to the exercise of all judicial functions; without that inherent power, courts would be mere puppets and their orders farcical.

As pointed out in **State ex Turner, Atty. Gen., v Albin, 118 Oh St, 527, 161 NE, 792,** the Legislature has defined contempt in §12137, GC, but the language of that section is not exclusive, and the statute merely regulates the power of the court to punish for contempt, instead of creating the power.

Examination of the next succeeding section, §12138, GC, discloses how contempt proceedings shall be prosecuted, and, among other things, it is made necessary that a charge in writing shall be filed with the clerk.

Our attention is further drawn to §12143 GC, which regulates the power of the court to punish for contempt in certain cases, upon which the order of commitment in this action is based. This section is as follows: "When the contempt consists in the omission to do an act which the accused yet can perform, he may be imprisoned until he performs it."

There can be no question that there are four or five alternative remedies when a purchaser at a judicial sale fails to comply with his bid and fulfill his contract of purchase with the court. It is not for the purchaser, however, to dictate the remedy, but for the court and those injured thereby to make choice of the means of redress for the wrong done by the purchaser's noncompliance.

It is well settled that a court of equity has jurisdiction to punish for contempt a purchaser at a judicial sale, made under its order, who refuses without reason or cause to complete his purchase according to the terms of the sale when he is yet able and can perform.

Upon bidding at a sale made by a receiver, under an order and decree in chancery, it is contemplated and understood by the purchaser that he bids with full notice that the sale to him will be subsequently reported to the court for its confirmation, and, when the sale to him has been confirmed, and the property ordered sold to him, he subjects himself to the jurisdiction

of the court, and becomes a party to the proceedings in which the sale was had, for he has voluntarily submitted himself to that court's jurisdiction; and the order of a court ratifying and confirming a sale for cash amounts to a decree for the payment of money, and, if that court could not protect the solemnity of its order, it would not be of any force at all. And, considering the order of confirmation as a decree for payment, it must follow that the purchaser who refuses to comply therewith is in contempt of court when he is able to perform and yet gives no adequate reason for his nonperformance.

The complainant herein asserts that there is no order on which a contempt charge in this instance could be grounded, due to the fact that the confirmation and order of sale do not provide that Bloomberg should pay the amount of his bid into court.

The order is in the usual form; that is, the receiver is ordered to convey the property to the purchaser upon receipt of the purchase price. Bloomberg and his attorney at time of sale must be held to know the inevitable result of the sale's confirmation; and it seems to this court that to adopt the construction now insisted upon by the plaintiff in error would be preposterous, for a court may assume that any one who voluntarily submits himself to the court's jurisdiction will obey its lawful orders. Courts recognize that it is something more than caprice that prompts one to bid at a judicial sale; for one may not trifle with the rights of others, as complainant would here do with the rights of the creditors of the insolvent market company.

It is urged that the judgment of contempt violates **Article I, §15, of the Bill of rights of the Constitution of Ohio**, in that it is an order of imprisonment for debt. But it must be remembered that this is not a suit to recover a sum of money owed by the defendant to the receiver of the court; nor can it be said to be a claim originally founded on contract express or implied. Its origin is in the wrongful act of the plaintiff in error in causing an order to be made in a proceeding then pending, to which he was not a party, but into which he voluntarily injected himself, and thereafter would obstruct.

· It is not the nonpayment of the purchase price that is the gravamen of this proceeding; it is the failure of the plaintiff in error in not abiding the court's order, against the consequences of which the

statute was designed. The constitutional provision was, no doubt, induced, and rightly so, to abrogate the harshness of the practice under the common law of imprisonment for debt; but it is just as certain that it was never intended as a shield for one who, as a purchaser at judicial sale, blocks the due course of justice by his wrongful act. The public is not interested in whether or not Bloomberg pays his debt, but it is interested that the due course of legal procedure be not interfered with, and that judicial sales be not made a comedy · and the courts rendered impotent to protect the rights of those who seek their protection.

This court has no doubt that the trial court rightfully found the plaintiff in error to be in contempt of court. But, when the punishment meted out by it is considered, a grave question presents itself.

Our Supreme Court in the case of **Second Nat'l Bank of Sandusky v Becker**, 62 Oh St, 289, 56 NE, 1025, 51 L.R.A., 860, announced that §5646, Revised Statutes, now §12143, GC, must be strictly construed so as to avoid conflict with the inhibitions of **Article I, §15, of the Bill of Rights of the Constitution of Ohio**.

There is but one conclusion as to the result of the punishment inflicted in this case, and that is that the court's further order is the equivalent of compelling, under threat of imprisonment, the specific performance of the bidder's offer to purchase the leasehold. In other words, the court, in the exercise of this extraordinary power, punishment for contempt of its orders and process, is made the vehicle of an equitable remedy to accomplish the purpose of compelling specific performance of the contract of purchase, and this is accompanied by a judgment for costs, and imprisonment until such are paid. It therefore seems to us that the committing court lost sight of the fact in its final conclusion that it was aggrieved, and found that the receiver and the corporate creditors were asking specific performance, and that it was entertaining the proceeding for the enforcement of a contract, express or implied, in fact a debt, which it had no power to collect by imprisonment in contravention of constitutional inhibition. Specific performance is not the purpose of contempt proceedings, or of the statutes enacted pursuant thereto.

In **Pierce, Assignee v Stewart**, 61 Oh St 522, 424, 56 NE, 201, although the question does not seem to have been in issue, it is said: "The punishment, as for contempt of

court under §5397, Revised Statutes, (now §11687, GC), is not the equivalent of specific performance, and cannot be made a substitute therefor."

This rule is likewise recognized in Ex Parte French, 4 W.L.G., 209, 3 Dec. Rep., 175.

It is not the intention of this court to hold that §12143 GC has no force or effect; but that it cannot be made to apply to this case. In certain instances it would have direct application, for example, where one having knowledge refuses to turn over specific property in his possession to a receiver, the order for so doing having been previously made.

The appellant insists that Bloomberg cannot be imprisoned for failure to pay the judgment for costs. We believe that this assertion is sound.

In Miller v Toledo Grain & Milling Co., 11 C.D., 629, 21 C.C., 325, it is held that one cannot be imprisoned for nonpayment of costs in a contempt proceeding for violation of an injunction, for the reason that §5581, Revised Statutes, (Now §11888, GC), does not so provide.

Examination of these sections relating to contempt proceedings, that is, §§12142 and 12143, GC, does not disclose that imprisonment for nonpayment of costs is made a part of the penalty for contempt; and the reason for the rule announced in the Miller case, supra, is equally applicable here.

The case of Carmosino v State, reported in 2 Ohio Law Abs, 776, is helpful on this phase of the question now before this court. In that action Carmosino was adjudged to be in contempt of court for his failure to complete his contract of purchase at a judicial sale. He was fined the sum of $50, and his down payment of $295 was forfeited as a part of the punishment. In reviewing that case the court held that it was plain from §§11687 and 12142, GC, that the court exceeded its authority in supplementing the penalty and punishment provided by the statute, and in such respect contravened the legislative enactment, the result constituting a deprivation of the property of the plaintiff in error in the sum of $295, without due process of law.

It must therefore follow that the judgment of imprisonment until the purchase price and costs were paid was erroneous, and was without due process of law, and amounted to imprisonment for debt.

It is further charged that the information filed with the clerk was not supported by a proper affidavit. It appears that the receiver made the complaint and that it was sworn to before his attorney. It will be noted that §12138 GC does not provide that the charge shall be sworn to, but simply requires it to be in writing, to be filed with the clerk, and an entry thereof made upon the journal. The oath thereto was a nullity and did not invalidate the proceedings. This view is also held in the Ninth Appellate District in **Bittinger v Bittinger, 5 Ohio Law Abs, 707.**

It has been said, with good reason, that in instances of this kind a receiver acts as amicus curiae; the receiver is not the one aggrieved, but it is the court, whose agent he is. And, again, it may be said that this is not an action for debt, but the charge is advice to the court that its orders have been contemptuously disobeyed. The receiver's oath thereto could not add anything to the charge, nor deny Bloomberg a substantial right.

The complainant insists that the reasons given by him for his refusal to complete his purchase are good and sufficient in law. With this we are unable to agree. His lack of knowledge, of which he complains, was due to his neglect in not examining the express covenants in the instrument creating the leasehold estate which he purchased. The lease was of record, and was referred to in the advertisement of sale, with which he says he was familiar. We are unable to conceive of a state of facts that would more urgently call for the application of the rule of caveat emptor; and he cannot now be heard to complain of that which was due to his own carelessness.

It appears from the record that, after the receiver and the auctioneer had fully testified to all essential facts concerning the entire transaction, the complainant was called for cross-examination. This procedure was objected to upon the theory that he was being compelled to give testimony against himself in violation of his constitutional right (see **Article 1, §10, Constitution**). And, upon interrogation by his attorney, when asked, "Are you testifying voluntarily, or are you willing to testify at this time?" his answer was, "No, not at this time." Whereupon the court announced: "The court is not interested to crowd anybody or to take advantage of anybody—Go forward. I will hear it all under objection and exception." At the conclusion of the cross-examination, complainant's counsel announced, "We reserve our examination of the witness until the defense." No defensive testimony was, however, thereafter offered.

It is insisted that §11497 GC, permitting one to cross-examine the adverse party,

cannot apply to a proceeding in contempt, for the reason that it is one of a quasi criminal nature and the party so charged might, as a part of the punishment, be imprisoned. We do not find that this question has ever engaged the attention of an Ohio court except in the case of Symons v Rice, 11 Oh Ap, 348.

We have examined a host of authorities in other jurisdictions that we might be advised as to the right and reason of the claim made. Our research reveals that quite a few states have enacted criminal statutes making contempt of court a criminal offense, and in those states it is universally held that one cannot be so made to testify.

In other states, where contempt of court is not made a crime by statutory enactment, to which class Ohio belongs, we learn from the more recent decisions that use of the term "quasi criminal," as applied to contempt cases, has caused much confusion and misunderstanding, and is now sharply questioned; and it is now strongly advanced that matters in contempt are properly divisible into two classes, civil contempt and criminal contempt. The latter may be illustrated by a case where one is charged with contempt of court for subornation of perjury, and, that being a criminal offense under Ohio law, it must be apparent that in such case it would be in derogation of one's constitutional right to compel him to be a witness against himself, for he might be forced to incriminate himself and thereby cause his imprisonment for crime, from which he would be thereafter unable to free himself by any act on his own part.

Now, upon consideration of the other class of contempt cases, that is, cases of civil contempt proceedings, there is no criminal element involved, and the action and process of the court is wholly remedial in its execution, and the one in contempt is in no way guilty of a violation of criminal law for which he can be prosecuted. It has been aptly said that one imprisoned for civil contempt usually carries the keys to his prison in his own pocket.

It is therefore the holding of this court, this being a civil contempt proceeding, that Bloomberg was not forced to part with his constitutional right when he was directed to proceed in the giving of his testimony on cross-examination, but was thereby aided in being afforded an early opportunity to make explanation, and to show cause why he was not in contempt of court.

It is further complained of in this proceeding that §8623-120 GC, under which

the receiver proceeded under his application of sale, does not authorize the receiver's sale. We find no merit in this contention, and hold that the statute expressly makes provision for the sale of corporate property; and this court further recognizes that, inasmuch as most corporate property is sold on dissolution by receivers, as in this case, the Legislature surely had that fact in mind and intended this section to approve of that well-established practice.

It is insisted that the order of sale to the receiver was a purely ex parte order, and could be withdrawn, and that it did not amount to a judgment or decree. That is, no doubt, true. But, it is equally a fact that a decree of the court was the father to the order of sale thereafter issued. And, when returned by the receiver, after sale made, which was then confirmed, it could not then have been withdrawn without cause.

We note that the last-named statute provides that an appraisement may be dispensed with by the court and an upset price fixed for sale. This we believe was properly done in this case; but now it is urged that the property was sold to the complainant for less than two-thirds of the up-set price recited as the appraised value in the advertisement of sale. Surely the complainant was not misled thereby, for he did not bid the two-thirds thereof. And it indeed seems strange that the purchaser is now the only one interested and heard to complain that the property was sold too cheaply. He now objects to that which was and is to his advantage. He charges that the sale was not made in compliance with the prior orders of the court. But we note from the authorities and from the statute, §11929 GC, that the confirmation of a sale rests in the sound discretion of the court. The sale, in this instance, was fairly made, and for the best price obtainable, and the irregularities therein complained of were cured by its subsequent confirmation.

And, as said by Clark on Receivers (2d Ed.), Vol. 1, §518, page 701: "A trial judge in equity proceedings exercising authority over a sale of property in the control of the court, has discretionary power to modify his orders affecting such sale by subsequent orders." This must be especially true where no fraud, mistake or surprise is shown, and the creditors of the defunct corporation do not complain, and are satisfied therewith.

It is also questioned whether the long-term leasehold sold in the proceeding is real or personal property. We do not deem

it necessary to determine that question. We know that such estates for many purposes are considered as real property, and, if that be true in this instance, then there can be no question that §§11687 and 11688 GC are applicable. But, if it be personal property, the question is fully answered in the Albin case herein previously cited, in that the statutes are not exclusive and do not create the power to punish for contempt.

Were we compelled to decide this point, we would be inclined to hold that a sixty-year leasehold is such an interest in real estate as would come within the plain intent and provision of these statutes.

It is therefore the judgment of this court that there is no error therein prejudicial to the rights of the plaintiff in error, except in respect to the sentence pronounced; it is therefore ordered that this cause be remanded to the trial court for resentence by it in accordance with law.

Judgment accordingly.

LEMERT, PJ, and MIDDLETON, J, (4th Dist), concur.