## LONG ISLAND MACHINERY & EQUIPMENT CO., Inc., et al. v. BAIRD et al.

No. 10764.

Court of Civil Appeals of Texas. Galveston.
May 19, 1938.

Rehearing Denied June 9, 1938.

John H. Benckenstein and Jack M. Moore, both of Beaumont, and Geo. H: Cavanagh, of Houston, for appellants.

Dean & Humphrey and J. G. Davis, all of Huntsville, and Andrews, Kelley, Kurth & Campbell and Homer Mabry, all of Houston, for appellees.

CODY, Justice.

This is an appeal from an order of the trial court granting a temporary injunction. It involves a conflict of jurisdiction between the district court of Trinity County and that of the United States for the Southern District of Texas.

On December 23, 1936, Paul T. Sanderson, the Receiver of the Waco, Beaumont, Trinity & Sabine Railway Company was, by an order duly entered in cause. No. 4832, styled "J. T. Baird vs. Waco, Beaumont, Trinity & Sabine Railway Company", directed by the district court of Trinity County to obtain bids on all the iron and steel track materials, including the rails, fastenings, spikes, exclusive of all bridge materials other than that constituting the White Creek bridge, but inclusive of its materials, on the Colmesneil Branch line of such railway company. On that date the Long Island Machinery & Equipment Company bid therefor the sum of $13 per gross or long ton. This bid was duly reported, and the court ordered it accepted, and approved the form of the contract of sale, and confirmed the sale. Under orders of the court, and according to the terms of the contract, the sold out material was delivered to the Com-

pany "as is and where is", on the estimated gross tonnage of 6,094 tons; and the Company paid therefor the sum of $79,220, being the price on the basis of $13 per gross ton. The Company, however, was required to, and did deposit in the Trinity State Bank the sum of $4,220 and the receiver, out of the $79,220, was required to place the like sum of $4,220 with said bank. This deposit, it is clear, was substituted for the sold out material to insure that, on final settlement, in case the actual tonnage was found to be more than the estimated 6,094 gross tons, it should be applied to the payment for such excess pro tanto; or in case the actual tonnage was found to be less than the estimated tonnage, the purchase price should be abated correspondingly. The sold out material had to be moved by rail to shipside, and, for that purpose, had to be weighed by rail carriers; so, it was provided that the final settlement would be made on the basis of the weight certified to by the railroads that transported such material.

The Company began to remove the sold out material shortly after it bought it, and was occupied in so doing until about August 1, 1937. Upon final settlement the Company produced the railroad certificates showing that the sold out material which it had shipped by rail totaled only 5,689.5806 gross tons; and demanded that the bank pay over to it the total deposit of $8,440. The receiver did not contest the accuracy of the weight certificates issued by the railroads that transported the sold out material, as covering all the material that moved over the scales of the railroads. He did contend, however, that large quantities of small scrap had not been removed, and that much of it which had been removed had been negligently permitted by the Company to be appropriated by strangers. When the rails were taken up from the roadbed, they were strung along the neighboring highway, and the small scrap was piled along the side of the highway to await removal by authorized subcontractors. The receiver complained about the manner in which the Company was removing the sold out material; peace officers actually caught trucks loaded with such removed rails and small scrap from time to time, and recovered unauthorized removals. (There seems to have been no distinguishing marks on the trucks of the sub-contractors lawfully engaged in hauling off such material). The 5,689.5806 gross tons for which the Company exhibited weight certificates were about a thousand gross tons

short of what the receiver contended had been sold to the Company "as is and where is". This claim he based on the inventory of the Waco, Beaumont, Trinity & Sabine Ry. Co., of such material, as changed by replacements.

On August 5, 1937, the Company filed, in the Federal court at Houston, a suit, making the bank alone a defendant, seeking a declaratory judgment of its rights to the $8,440 deposit; and prayed for a mandatory injunction to compel the bank to transfer such sum to it. On August 12, in that suit, the bank was ordered to show cause why such injunction should not be granted. The bank then asked leave to interplead the receiver, and to be permitted to file a bond instead of paying over the funds, which requests the Federal court granted. However, the bank did subsequently, with the court's approval, pay into the registry of the court the $8,440 deposit. In response to the process, issued on the bank's prayer to interplead him, the receiver made a limited appearance in the Federal court. But on September 8, 1937, the judge made the following ruling:

"After considering the contracts of December 23, 1936, between Paul T. Sanderson, Receiver, and the Long Island Machinery & Equipment Company, Inc., I strongly incline to the view that the district court of Trinity County, where such receivership is pending, has jurisdiction of the controversy sought to be litigated here, and may give all parties full and adequate relief; and believing that great care should be taken to avoid conflicts of jurisdiction between Federal and State courts, the prayer is denied. I decide no other questions."

The receiver was thereupon dismissed from the Federal suit.

On August 10, 1937, the receiver applied to the State court for leave to file suit against the Company, and, on leave granted, filed a suit against the Company to recover the alleged under payment of its bid, and sued out an attachment and garnishment on the $8,440 deposited in the bank. Later, on October 26, but under the number and style of the receivership proceeding, the plaintiff in such receivership proceeding, together with the receiver, under the style of "relators", brought suit against the Company and J. H. Benckenstein, as its agent in Texas, and against him and J. M. Moore, and J. T. Scott, Jr., as the Company's attorneys in the Federal court suit, styling them "respondents". Relators'

pleading is quite lengthy. For present purposes it is enough to say that it alleged that the $8,440 was deposited in the bank in payment of, and in compliance with, its bid on the sold out materials made on December 23, 1936, under orders of the court and in conformity with the contract; that the deposit so placed in the bank was placed under the control and jurisdiction of the court in place of the sold out material, which was theretofore delivered and released to the Company, and that such deposit was to insure compliance with its bid, as the final amount was determined on final settlement; that the amount of sold out material delivered "as is and where is" to the Company on December 23, 1936, was 6,603.9049 gross tons, and that the Company was negligent in failing to have so much of the sold out material as constituted the difference between such gross tonnage actually delivered to it, and the 5,689.5806 which it had weighed, included and shown by the railroad weight certificates. The value of the sold out material at the specified purchase price was alleged to be in a sum in excess of the amount of $8,440 deposited in the bank. Relators' pleading further alleged that, in bidding in the property, and depositing the sum in the bank, under orders of the court and in compliance with the contract to insure the payment of its bid on final accounting, the Company had thereby submitted to the jurisdiction of the court for the purpose of such final accounting; and that the $8,440 was under the court's jurisdiction and control. It further alleged the suit, filed by the Company in the Federal court through its attorneys, was an attempt to remove such fund beyond the court's control and jurisdiction.

Relators sought a temporary restraining order to prevent the Company and its attorneys from prosecuting the Federal court suit, and against any other attempt to remove the money deposited in the bank from the court's control or jurisdiction or beyond the limits of the State; such restraining order to be made a temporary injunction after a hearing, and pending final hearing. (Relators' pleading also contains an alternative count, which, on this appeal, is not involved).

In response to the foregoing pleading, David L. Broadus, under leave of court, filed on January 11, 1938, as amicus curiae, a plea to the court's jurisdiction. He alleged that the Company was a foreign corporation, doing no intrastate business in

Texas, and having no permit to do business here and no agent or office in Texas upon whom service of citation could be had, etc., etc., and that the court did not and could not have personal jurisdiction over the Company by reason of any service of citation. The plea further urged that the deposit of the $8,440 in the bank was not under the control and the jurisdiction of the court, and that upon exhibiting the railroad weight certificates the bank was bound to pay over to the Company the full amount of such deposit, by the terms of the contract. The plea also urged that the independent suit, filed under leave of the court on August 10, with its ancillary attachment and garnishment suits, constituted an election to proceed by that mode, and the authority so granted the receiver by the court to proceed in that way is res judicata as to the matter; so that the receiver is estopped to proceed in the instant suit. That the State court has no jurisdiction over the Company, or the $8,440, also because, on August 5, 1937, the Company filed the Federal court suit, etc. To this plea were attached the affidavits of the president of the Company, and of Benckenstein, which set forth facts which showed that the Company could not be brought to trial in a Texas State court except in a suit where it voluntarily submitted to such court's jurisdiction.

On the same day, and subject to the court's action on the amicus curiae plea, the Company filed its plea to the jurisdiction, which was virtually identical with that of the amicus curiae plea. On the same day the Company filed a plea in abatement, which was also virtually identical with the amicus curiae plea: and on the same day, subject to the court's action on the amicus curiae plea and its plea to the jurisdiction and plea in abatement, the Company filed its "Defendant's Original Answer and Motion to Dismiss", consisting of a general demurrer, a "special exception", which was itself also a substantial copy of the amicus curiae plea, and a general denial.

The answer of the bank seems not to have been formally filed, and is not in the transcript, but was introduced in evidence at the trial when its attorney was on the stand. In substance it simply requests not to be enjoined from participation in the Federal suit unless the Company and its attorneys were also enjoined from furthering its prosecution,—a thoroughly reasonable position.

The answers of the other respondents— the Company's attorneys—were formal in character. Mr. Scott did not answer, or otherwise make an appearance.

On January 18, the court overruled the amicus curiae plea, and the *Company* in open court excepted; the court then overruled all the other above-noted pleas, to which action the Company in open court excepted, and Mr. Benckenstein and Mr. Moore, the Company's attorneys, also excepted. The default of Mr. Scott was entered. The court then, after hearing, granted the temporary injunction. Whereupon the Company, and its answering attorneys, in open court excepted and gave notice of appeal.

█ A conflict of jurisdiction between State and Federal courts is always to be regretted, and no unseemly contest therefor will be permitted. We are in accord with the view expressed by the Hon. T. M. Kennerly, Judge of the Federal court, in his ruling made on September 8, copied above. "A receiver's sale, whether public or private, made in pursuance of statute or an order of court, or subsequently reported to and confirmed by the court, is a *judicial* sale. It has no other effect upon the receivership than to bring the proceeds of sale into court in place of the property." (Italics ours). 53 C.J. 203. "Upon bidding at a sale made by a receiver, under an order and decree in chancery, it is contemplated and understood by the purchaser that he bids with full notice that the sale to him will be subsequently reported to the court for its confirmation, and, when the sale to him has been confirmed, and the property ordered sold to him, he subjects himself to the jurisdiction of the court, and becomes a party to the proceedings in which the sale was had, for he has voluntarily submitted himself to that court's jurisdiction; and the order of a court ratifying and confirming a sale for cash amounts to a decree for the payment of money, and if that court could not protect the solemnity of its order, it would not be of any force at all." Bloomberg v. Roach, 43 Ohio App. 178, 182 N.E. 891, 893.

█ There could have been no other purpose in requiring the $8,440 placed in the bank than that of insuring that the bid, as the amount of it should be determined by the actual weight of the sold out material, should be paid. The buyer, a foreign corporation without a permit to do business

in Texas, expected to, and did ship the material to Japan. The most rudimentary principles of prudence required that such buyer should substitute, in the court's hand, for the material delivered to it, the paid purchase-price plus the deposit which was required to cover such price,—as it was finally determined upon weight. The plea of the Company that it was accountable, not for the sold out material delivered to it "as is and where is", but for only so much of it as it took up and moved over railroad scales, and obtained weight certificates on, we regard as frivolous. The deposit of $8,440 was under the jurisdiction of the court, pending the determination, upon final settlement, of the actual amount of the bid, as determined by the actual weight of the sold out material.

■ Jurisdiction of the State court over the deposit, the res, pending final settlement, doubtless carried with it jurisdiction over the buyer pending such final settlement, at least to the extent necessary to award the deposited funds, and to adjudicate on the buyer's interest in such res. However, the Company filed an answer in response to relator's suit, and an answer constitutes "an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him." Art. 2047, R.S.1925. "The purpose for which appearance is made is unimportant, as is the intention with which it is made, if the act done is one which the statute declares is such as gives to the court jurisdiction to render a personal judgment against the person appearing." York v. State, 73 Tex. 651, 11 S.W. 869, 871, the leading case on the point. In this case the Supreme Court also said (page 870): "That appellant made, at least, a special appearance in the court below cannot be questioned; and it was not a compulsory appearance, for no process had been served on him which compelled him to appear, or take the consequence of default, nor had any of his property been seized under process which made it necessary for him to appear in order to protect it, or his rights in it. A judgment entered against him as the case stood before he appeared would have been a nullity." While a judgment entered in the present case adjudicating the rights of the parties to the res would not have been a nullity, yet the Company had voluntarily deposited the res and subjected it to the court's jurisdiction. Its subsequent action in voluntarily appearing to contest such jurisdiction cannot constitute an involuntary appearance. The court did not err in overruling the dilatory pleas. "The filing by a defendant of any defensive pleading, though it be only for the purpose of challenging the jurisdiction of the court, constitutes an appearance and a submission to the jurisdiction of the forum." Atchison, T. & S. F. Ry. Co. v. Stevens, 109 Tex. 262, 206 S.W. 921.

■ We have read the extended statement of facts in this case, and are thereby impressed with the wisdom of the rule which limits the hearing on temporary injunction to submission of affidavit proof. From the statement of facts it appears that relators submitted evidence tending to establish their claim that the weight certificates did not cover a substantial part of the sold out material; i. e., that the receiver delivered to the Company substantially more material than was covered by the weight certificates. This was sufficient to authorize the court to order a temporary-injunction. It would have been inappropriate, on an interlocutory hearing, to have introduced, in this respect, such proof as on a final trial would be necessary to sustain a judgment for the receiver against the Company for a sum certain. Hearings on temporary injunctions are not intended to be used, and should not be permitted to be used, as a means of trying a case twice; first to the court without a jury, and then later with one.

We have carefully examined appellants' assignments of error. We are unable to see that the trial court abused its discretion in issuing the temporary injunction to hold the matter in statu quo pending final hearing; and overrule appellants' assignments, and affirm the trial court's judgment.

Judgment affirmed.

PLEASANTS, C. J., absent.

On Appellants' Motion for Rehearing.

CODY, Justice.

On the trial appellants introduced in evidence the certificate of the clerk of the U. S. District Court for the Southern District of Texas, which certificate reflected that on the date of its issuance, August 31, 1937, the case in the Federal court was still pending, and further purported to reflect the proceedings had in such case up until such date. The last order shown by such certificate was one made August 26, 1937,

to the effect that the receiver, in response to ·the interpleader of the Trinity State Bank and its prayer for preliminary injunction, be required to appear and show cause on September 2, 1937, why such prayer should not be granted. Appellees introduced in evidence the ruling of Judge Kennerly, made September 8, 1937, and which is quoted in our original opinion. This ruling recognizes prior jurisdiction of the State court of the matter in controversy, and denied the bank's prayer for a preliminary injunction against the receiver. As appellants only showed that the receiver was brought before the Federal court to answer the bank's bill of interpleader and prayer for preliminary injunction, and as this last ruling of Judge Kennerly disposed of the receiver in that connection, we concluded from the record before us that the effect of such ruling was to dismiss the receiver. Our own ruling in this case goes no further, and it is intended to go no further, than the recognition of the State court's jurisdiction to determine the controversy which is discussed at length in our original opinion, and to protect such court in the orderly exercise of such jurisdiction. Our ruling is therefore in perfect accord with Judge Kennerly's ruling of September 8, 1937. Whether we may have been wrong in designating this cause as a conflict of jurisdiction is an indifferent matter. But the fact that we share Judge Kennerly's view that jurisdiction over this controversy is in the district court of Trinity County and ought to be litigated there, even though it may indicate that this cause is not in fact one of conflict of jurisdiction, presents no reason to change our disposition of this appeal—quite the contrary.

Appellants' motion for rehearing refused.

PLEASANTS, C. J., absent.