BEACH, JR., APPELLANT, *v.* BEACH, APPELLEE.

(No. 1443—Decided December 21, 1946.)

*Mr. O. W. Kennedy* and *Mr. Edward J. Myers,* for appellant.

*Mr. Charles F. Schaber* and *Mr. Theodore L. Lutz,* for appellee.

JACKSON, J.   On December 30, 1942, Marvin C. Beach, Jr., filed a petition for divorce against Madeline Beach, praying, among other things, that he be given the care, custody and control of the minor children during the pendency of the action, and that upon the final hearing he be granted a divorce and the full care, custody and control of the children.   The cause is numbered 20814.

Without a hearing, the court granted the temporary care, custody and control of the children to Marvin C. Beach, Jr., appellant herein.

On March 27, 1943, Madeline Beach, appellee herein, filed an answer and cross-petition praying that the petition of plaintiff, Marvin C. Beach, Jr., be dismissed, and that she be awarded the custody of the three children, and for any other relief to which she may be entitled.

On June 15, 1943, by journal entry the trial court, after the case came on to be heard upon its merits, decided, upon further consideration and solely for the welfare of the three minor children of the parties, that the case should not be heard upon its merits, and that the former decree should be modified awarding to Madeline Beach the custody of the children when and if Madeline Beach established a home in Bucyrus sufficient for herself and the children to live comfortably.

On the 22nd of July 1943, Madeline Beach had apparently not been able to establish a home, and the children were still in the care, custody and control of the father, Marvin C. Beach, Jr., and living in the home of his parents wherein he resided in Bucyrus.

On July 22, 1943, sometime during the morning, Madeline Beach had a conference with Clarence U. Ahl, the Common Pleas judge of Crawford county, the same judge who had presided over all matters in connection with case No. 20814 in the Common Pleas Court of Crawford county, Ohio, which case was the divorce action hereinbefore mentioned. As a result of that interview with Judge Ahl, complainant's exhibit A was drafted by Judge Ahl and signed by him as judge and delivered to Madeline Beach, which in substance gave the custody of the minor children to Madeline Beach from ten o'clock a. m., July 23, 1943, until seven o'clock p. m., July 26, 1943.

With that document Madeline Beach proceeded to the home of the parents of Marvin C. Beach, Jr., where the children were living. The only adult person in the home was a sister, Jeanette Beach, to whom ex-

hibit A was shown through a screen in the door, and who refused to turn over the children. Whereupon, Madeline Beach went to Shelby, Ohio, to seek the advice of her attorney, Theodore L. Lutz. Meanwhile, Marvin C. Beach, Jr., and his sister, Jeanette Beach, went to the courthouse at Bucyrus, Ohio, to interview Judge Ahl. That interview, in addition to being featured by the obscene and vile language used toward Judge Ahl by Marvin C. Beach, Jr., clearly demonstrated that both the sister, Jeanette Beach, and Marvin C. Beach, Jr., knew and understood the contents of complainant's exhibit A, even though there is some claim that Marvin C. Beach, Jr., could not read. Marvin C. Beach, Jr., left the courthouse with a clear understanding of what the order required, except that he was in complete disagreement with the order of the judge, as well as the efforts of his own counsel in his behalf. All of those matters occurred before noon of July 22, 1943.

Meanwhile, Madeline Beach and her attorney, Lutz, contacted Judge Ahl with reference to the divorce matter and Lutz went along with Madeline Beach to the home on her second visit of that day. Lutz, with the order in his hand, knocked on the door, presented the order to Marvin C. Beach, Jr., and without any delay Marvin C. Beach, Jr., started a fight in which he was considerably assisted by his father, Marvin C. Beach, Sr., and perhaps by his mother and sister, Jeanette. Lutz in no wise did any striking and adopted a defensive attitude of trying to hold everything in check. The fight lasted about 15 or 20 minutes. Meanwhile, Madeline Beach attempted to contact official help over the telephone, but without success.

All the evidence conclusively shows that Lutz was severely beaten and mauled.

At once they came back to the courthouse and conferred with Judge Ahl and exhibited the beating which

Lutz had received, and which is clearly demonstrated in complainant's exhibits B, C, D and E.

Whereupon Judge Ahl filed with the clerk a journal entry containing the order known as complainant's exhibit A, with this modification: July 26 was changed to July 28. A further order was filed certifying the matter of the custody of the minor children to the Juvenile Court of Crawford county.

Whereupon Madeline Beach filed with the clerk written charges alleging disobedience by Marvin C. Beach, Jr., and Marvin C. Beach, Sr., of the order of the court directing that Madeline Beach have custody of the children from July 23, 1943, ten a. m., to July 26, 1943, seven p. m.; and alleging that in performing the disobedience Marvin C. Beach, Jr., and Marvin C. Beach, Sr., seriously assaulted Madeline Beach and did assault and batter her attorney, Theodore L. Lutz. Upon motion, rule was allowed against Marvin C. Beach, Jr., and Marvin C. Beach, Sr., directing them to appear before the court on the 28th day of July 1943, at eight-thirty o'clock a. m., to show cause why they should not be punished for contempt for their disobedience and misconduct.

The hearing in contempt came on before Frederick R. Wickham, a judge of the Court of Common Pleas, on the 11th day of October 1943, and at the close of the complainant's testimony motions of dismissal were filed and overruled. Thereafter, no testimony was offered by either of the respondents, and again the motions for dismissal were renewed and overruled, and the court took the same under advisement.

On the 14th of October 1943, the court, after full and careful consideration of the charge of contempt and the testimony, found Marvin C. Beach, Jr., and Marvin C. Beach, Sr., guilty of contempt as charged.

Motions for new trial being filed in due course and overruled, judgment was pronounced that Marvin C.

Beach, Jr., stand committed to the county jail of Crawford county, Ohio, for a period of ten days and pay a fine of $100. A like fine and jail sentence were assessed against Marvin C. Beach, Sr. Execution of the judgment was suspended pending appeal to this court.

Assignment of error No. 1 is that the charge for contempt was not maintainable in cause No. 20814, which was a suit for divorce, alimony and custody of minor children.

In a contempt proceeding of this character it is essential that a case be pending and, therefore, there is no merit to that assignment.

The second assignment of error is that the motion filed by Madeline Beach in the action for divorce was insufficient in law to invoke the jurisdiction of the Court of Common Pleas in cause No. 20814.

Assignment of error No. 3 is that the motion, under and upon which the citation of contempt was issued, was insufficient in law.

Those contentions have no merit and are apparently different phrasings of the same complaint. *Hayes v. Hayes,* 11 Ohio App., 10, 15; *Phillips S. & T. P. Co. v. Amalgamated Assn.,* 208 F., 335, 343.

The fourth assignment of error, that the motion charging contempt did not state a cause for contempt, will be discussed last.

The fifth assignment of error is that the findings and conclusions of the Common Pleas Court are not supported by sufficient evidence and are contrary to the evidence and contrary to law.

There is competent, credible and substantial evidence to sustain the findings and conclusions of the Common Pleas Court if the findings and conclusions are not contrary to law.

Assignment of error No. 6 is that the court erred in the admission of evidence objected to by the plaintiff.

As that assignment is neither argued in the brief nor orally, it is unnecessary to pass upon it.

Assignment of error No. 7 is the overruling of the motion of Marvin C. Beach, Jr., for judgment and finding in his favor and for dismissal of the action, made at the close of all the evidence.

Assignment of error No. 8 is the overruling of the motion of Marvin C. Beach, Jr., for a new trial.

Assignments of error Nos. 7 and 8 are overruled, unless and if the judgment is not contrary to law.

The courts have generally held that the General Assembly is without authority to abridge the power of the court, created by the Constitution, to punish contempt summarily, such power being inherent and necessary to the exercise of judicial functions; and that such provisions of the law as Sections 12843, 12844 and 12866, General Code, will not be construed as to impute to the General Assembly an intention to abridge such power. *Hale* v. *State,* 55 Ohio St., 210, 45 N. E., 199, 60 Am. St. Rep., 691, 36 L. R. A., 254; *Steube* v. *State,* 3 C. C., 383, 391, 2 C. D., 216; 9 Ohio Jurisprudence, 132, Section 72.

Such power is inherent in the courts and necessary to the exercise of judicial functions. If the court has the inherent power to summarily punish contempt, it must by the same token have the power to determine the kind and character of conduct which will constitute contempt. *State, ex rel. Turner,* v. *Albin,* 118 Ohio St., 527, 535, 161 N. E., 792.

The United States Supreme Court, at an early date, in *Ex Parte Robinson,* 86 U. S. (19 Wall.), 505, 22 L. Ed., 205, declared the inherent power of courts to punish for contempt.

The acts constituting contempt cover a wide range. The most familiar form of contempt of court is found in acts which hinder, delay and obstruct the adminis-

tration of justice, which acts are usually committed in the course of the adjudication of some cause or the execution of its judgment. Acts which bring the court into disrepute or disrespect, which offend its dignity, affront its majesty or challenge its authority constitute contempt of court. 12 American Jurisprudence, 395, Section 9.

Certain acts constituting contempt are enumerated in Section 12137, General Code, but the statute is not exclusive, and, if the court has inherent power to punish contempt summarily, it must by the same token have the power to determine the kind and character of conduct which will constitute contempt, even when not expressly provided for in the statute. The most familiar forms of contempt of court are found in acts which hinder, delay and obstruct the administration of justice, and such acts are usually committed in the course of some cause or its adjudication. However, some acts are such as tend to bring the court into disrespect or disrepute, subject it to ridicule, offend its dignity, affront its majesty or challenge its authority. 12 American Jurisprudence, 395, Section 9.

"The presence of the court," as that term is used with reference to contempt, is understood to be "the court" and consists not of the judge, the courtroom or the juryroom, individually, but of all these combined. The court is present wherever any of its constitutent parts is engaged in the prosecution of the business of the court according to law. Accordingly, it is held that any act which is calculated to impede, embarrass or obstruct the court in the administration of justice is to be considered as committed in the presence of the court. 12 American Jurisprudence, 392, Section 5.

The rule is well settled that attorneys are officers of the court. 4 Ohio Jurisprudence, 435, Section 22.

Assaults committed in the presence of the court or

so near thereto as to disturb the administration of justice, or assaults upon a judge, juror, attorney, witness or officer of the court, in the performance of his duty in connection with court proceedings or to deter him from such performance in the future, have been punished as contempts of court. 12 American Jurisprudence, 396, Section 10.

When they speak of "in the presence of the court," the courts have universally held that it is more than the idea of physical propinquity.

Neither place nor distance from the court determines whether the act complained of is done constructively in the presence of the court. However, if the act is of such character and is done under such circumstances that naturally its effect would be felt in the actual administration of justice, then the act is as much done in the court's presence as if the person doing the act were actually in the court's presence. 9 Ohio Jurisprudence, 18, Section 4.

Conduct which tends to obstruct the untrammeled and unprejudiced exercise of the judicial power is punishable irrespective of the place where committed. 17 Corpus Juris Secundum, 10, Section 8; *Conley* v. *United States,* 59 F. (2d), 929; *Froelich* v. *United States,* 33 F. (2d), 660; *Wind* v. *State,* 102 Ohio St., 62, 130 N. E., 35; *Miller* v. *State,* 3 Ohio St., 475.

It is the general principle that disobedience of any lawful and valid judgment, decree or order of the court acting within its jurisdiction, of which one has notice or actual knowledge, constitutes contempt of court. 12 American Jurisprudence, 405, Section 24; 18 A. L. R., 215.

Under Section 12137, General Code, a proceeding in contempt must be based upon some order, judgment or command of a court or officer, or it must be dismissed. It is the wilful violation of an order of court which

constitutes contempt, and there must be an intent, with knowledge of the order or at least of its nature, to transgress it, before a court will inflict punishment. 9 Ohio Jurisprudence, 79, Section 43.

It is essential to the punishment of a person for contempt for violation of a court's order, that he have notice of the order, either actual or by service of the same upon him. 9 Ohio Jurisprudence, 84, Section 44; *In re Frisbie,* 27 Ohio App., 290, 161 N. E., 346; *Mc-Whorter* v. *Curran,* 57 Ohio App., 233, 245, 13 N. E. (2d), 362.

It cannot be seriously contended that, between the time an order is made in open court and the reducing of such order to writing, of which order the person has knowledge, the person so affected cannot act in such a way as to violate the order. *In re Lilliland,* 4 W. L. B., 733, 7 Dec. Rep., 659.

Without the inherent power of the courts to punish for contempt, which power is necessarily incident to the exercise of all judicial functions, the courts would be mere puppets and their orders farcical. *Bloomberg* v. *Roach, Recr.,* 43 Ohio App., 178, 182 N. E., 891.

Various practices have prevailed in the procedure for contempt. Arraignment and plea are not necessary or essential in contempt proceedings. *Markovic* v. *State,* 7 Ohio Law Abs., 491.

However, it is the better practice, where a judge has no personal knowledge through the medium of his own senses at the time the act is committed but must rely for his knowledge upon evidence thereafter to be produced, that a written charge be filed and the accused afforded an opportunity to know the nature of the charge to be placed against him before sentence is imposed. *Rose* v. *State, ex rel. Lieghley,* 14 Ohio Law Abs., 542; *Post* v. *State,* 14 C. C., 111, 7 C. D., 257.

Where there has been a violation of an order, it is

not necessary to docket an independent action in contempt, or proceed in an independent prosecution to enforce the order made in a civil action. *Ray* v. *Street Ry. Co.*, 10 C. C. (N. S.), 577, 12 C. D., 793, judgment affirmed without opinion, 57 Ohio St., 664, 50 N. E., 1133.

In one of the cases cited in this paragraph, the proceeding was entitled "*Hayes* v. *Hayes*" as in the main equity proceeding. It would not have been improper to have styled the proceeding as "*In re Hayes*" and to have docketed it separately, but that was not necessary. *Hayes* v. *Hayes, supra,* 15; *Phillips S. & T. P. Co.* v. *Amalgamated Assn., supra,* 343.

With reference to the punishment of persons adjudged guilty of contempt, it has been the general rule that the courts have inherent power to impose a penalty reasonably commensurate with the gravity of the offense. It will be observed that for violation of direct contempt under Section 12136, General Code, the punishment for such or constructive contempt embraced therein is wholly within the discretion of the court. 9 Ohio Jurisprudence, 135, Section 73.

The United States Supreme Court has said that a judgment of contempt should not be disturbed except in case of a clear miscarriage of justice. *Conley* v. *United States, supra,* paragraph 14 of the syllabus; *Froelich* v. *United States, supra.*

Therefore, in the absence of constitutional permission, the Legislature cannot destroy, abridge, or limit the inherent power of courts to punish for contempt, although it may regulate the exercise of such power and enlarge it beyond its inherent scope. Statutes purporting to confer power to punish acts which are within the purview of the court's inherent power are held to be merely confirmatory of the common law. 17 Corpus Juris Secundum, 58, Section 43-b.

It is the opinion of the court that the unprovoked assault and battery upon an officer of the court, Lutz, at the time and place and under the circumstances is a contempt of court of the most serious nature.

As an officer of the court, Lutz, representing his client, Madeline Beach, was in the performance of his duty in assisting or attempting to assist in the execution of a command issued by the judge who had jurisdiction and administrative control at the time over the persons and the children in a case pending in court.

There being no prejudicial error in the proceedings or disclosed by the record, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and GUERNSEY, J., concur.