IN RE CARROLL.

(No. 49027 — Decided June 17, 1985.)

*Daniel D. Wilt,* for appellant.

*John T. Corrigan,* prosecuting attorney, for appellee.

JACKSON, J. Appellant, Paul Carroll, appeals from a judgment of the common pleas court holding him in contempt of court. He was ordered to pay a $100 fine and court costs. The fine was suspended.

The following facts gave rise to the contempt judgment.

On July 2, 1984, appellant attended a foreclosure sale and entered the high bid on a parcel of land. When appellant's bid was accepted by the deputy sheriff in charge of the sale, appellant was requested to deposit cash or a certified check in an amount equal to ten percent of his bid. This ten-percent deposit was to serve as earnest money, and would be forfeited if the successful bidder failed to complete the purchase.

Instead of depositing his down payment in cash or certified check as required, appellant produced a document which was described as a letter of·credit,

or a statement of funds on deposit at appellant's bank.[1] The cashier rejected appellant's "letter of credit." Subsequently, the deputy sheriff filed a contempt citation affidavit, pursuant to the following language from Loc. R. 27 of the Court of Common Pleas of Cuyahoga County, General Division[2]:

"In the event that a party shall register a bid at a Sheriff's sale and such bid is accepted by the Sheriff as the successful bid, and said party offering said bid fails to deposit in cash or by certified check payable to the Sheriff ten percent (10%) of the amount of such accepted bid, he shall be in contempt of this court and the Sheriff shall forthwith withdraw said parcel from sale and return the order of sale without execution and shall forthwith commence the same action as related to purchasers failing to pay the balance due on a purchase as set forth in this Rule 27."[3]

On July 17, 1984, a hearing on this matter was held before the court of common pleas. Appellant was present in court, and assisted by counsel. Testimony was taken, and appellant was found to be in contempt of court based on his actions at the sheriff's sale. Sentencing was set for August 2, 1984.

At the hearing on sentencing, appellant argued a motion to vacate the finding of contempt. The motion was denied, and sentence was imposed.

Appellant assigns two errors for review by this court.

I

Appellant contends in his first assignment of error that Loc. R. 27 is unconstitutional because it violates the Due Process Clauses of the federal and Ohio Constitutions. Specifically, appellant argues that Loc. R. 27 compels an automatic finding that the accused contemnor is guilty, regardless of any defenses that would otherwise be available to him.

Although the language of the rule ("he shall be in contempt of this court"), when read in isolation, appears to support the appellant's position, we decline to consider this clause out of context. Instead, we are persuaded that this language must be read in conjunction with the preceding paragraph of Loc. R. 27, which plainly contemplates a hearing and an independent finding by the court.[4]

In any event, appellant failed to raise his due process argument below, and is therefore precluded from addressing it at this level. See *State, ex rel. Specht,* v. *Bd. of Edn.* (1981), 66 Ohio St. 2d 178 [20 O.O.3d 191]; *Jelen* v. *Price* (1983), 9 Ohio App. 3d 174.

II

Appellant further asserts that the trial court erred in finding him in con-

---

[1] The precise nature of the document is unclear. It was not included in the record transmitted to this court.

[2] For the full text of the rule, see version published by Anderson Publishing Company, as amended November 6, 1978 (Civil Journal Vol. 420, Page 853 *et seq.*).

[3] The "same action" to be commenced is described earlier in Loc. R. 27:
"In the event a purchaser fails to pay the balance due on the purchase price within said thirty (30) days after the date of sale, he shall

be in contempt of this court and the Sheriff shall forthwith cause a citation to issue commanding such defaulting purchaser to appear before the judge of this court having such matters in charge and show cause why he should not be punished. Upon a finding of guilt or contempt, the court proceeds in accordance with R.C. 2327.04."

[4] Unfortunately, it does not appear that the trial court felt the need to make an independent finding. The court apparently interpreted Loc. R. 27 to obviate the necessity for any meaningful judicial scrutiny.

tempt of court, because the uncontradicted evidence showed that appellant's actions throughout were in good faith, and appellant never intended any disobedience or disrespect.

Appellant explained to the court:

"The word 'certified' means to me it's guaranteed, vouched for, and that's what I went by. I had no idea what amount to make the certified check for. I didn't know what the bid was going to be. This was the first Sheriff's sale I had ever been to.

"* * *

"I made a bid. It was accepted and I went in with a letter of credit from the bank, which I had arranged for, and when I found out it was not acceptable, I offered to go down to the bank and get it certified, and they wouldn't let me do it.

"I came back the next day with a certified check and they wouldn't accept it, so they — that was the end of it."

When appellant appeared in court for the contempt hearing, he was still carrying the certified check for ten percent of his bid. He delivered the check to the court. After appellant was adjudged to be in contempt, the court permitted appellant to tender the check to the county's cashier once again. Finally, it was accepted.

Unlike his constitutional argument, appellant's *mens rea* argument was presented to the trial court. The following exchange took place between the court and defense counsel:

"MR. WILT: I think it was nothing but a good faith belief error. I don't believe he was contemptuous of the Court. There was no intent.

"THE COURT: I will determine what's contemptuous. Do you know that your client faces a possible six months in jail and a fine of up to $1,000? Do you know that?

"MR. WILT: Of course, your Honor.

"THE COURT: Anything further?"

The court expressly acknowledged that appellant did not intend to violate the rule. The question before this court, then, is whether appellant was properly held in contempt of court despite the absence of any intent to disobey or defy the court. In order to resolve that issue, it is essential for this court to classify the type of contempt that is implicated in the case at bar.

Contempt has been variously classified by the courts of Ohio as criminal or civil, direct or indirect. See, e.g., *In re Roberts* (1963), 175 Ohio St. 123 [23 O.O.2d 410].

Direct contempt is "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01.[5] Direct contempt may be punished summarily by the trial court.[6]

Indirect contempt, on the other hand, is conduct which takes place outside the presence of the court.[7] The court is not usually aware of the indirect contemptuous act when it occurs. When the court is informed that an act of indirect contempt has taken place, the ac-

---

[5] R.C. 2705.01 merely restates the inherent power of a court to summarily punish contemptuous acts committed in the presence of the court. See *Hale* v. *State* (1896), 55 Ohio St. 210; *In re Neff* (1969), 20 Ohio App. 2d 213 [49 O.O.2d 312].

[6] This power to punish summarily "is justified because the trial court is personally aware of the relevant facts." *State* v. *Kilbane*

(1980), 61 Ohio St. 2d 201, 204, fn. 4 [15 O.O. 3d 221].

[7] The contempt of the court's presence is "more than the idea of physical propinquity," however. *Beach* v. *Beach* (1946), 79 Ohio App. 397, 404 [35 O.O. 172]. Direct contempt may occur in the "constructive presence" of the court. See *State, ex. rel. Seventh Urban, Inc.,* v. *McFaul* (1983), 5 Ohio St. 3d 120 (misconduct in courtroom when court personnel other than judges were present).

cused contemnor will be given notice and a hearing held on the charge. R.C. 2705.03. Acts constituting indirect contempt may include the following:

"(A) *Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;*

"(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

"(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

"(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

"(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance." (Emphasis added.) R.C. 2705.02.

In the instant case, appellant unintentionally disobeyed a rule of court. The court was not present. Allegations of appellant's misconduct were presented to the court by affidavit, and a hearing was held, at which appellant was present with counsel. With the evidence in this posture, this court is persuaded that the alleged contempt would be properly categorized as *indirect* contempt. See *East Cleveland* v. *Reed* (1977), 54 Ohio App. 2d 147 [8 O.O.3d 277] (defendant's failure to appear at hearing was in the nature of indirect contempt, because not in court's immediate presence); but, cf. *State* v. *Local Union 5760, United Steelworkers*

(1961), 172 Ohio St. 75 [15 O.O.2d 133] (deliberate interference with a sheriff in his attempt to execute a writ of replevin constitutes direct contempt in the constructive presence of the court).

Having determined that the allegation of contempt in the case at bar is in the nature of indirect contempt, the next question for consideration by this court is whether the proceeding below was one of civil or criminal contempt.

The distinction between civil and criminal contempt turns on the character and purpose of the sanction imposed. Either a fine or imprisonment, or both, may be imposed in civil *or* criminal contempt cases. In the civil context, however, the purpose of the sanction is coercive: that is, it is intended to force the contemnor to comply with the court's order. Compliance, in turn, redounds to the benefit of the civil complainant. See *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250 [18 O.O.3d 446]. A sanction for civil contempt must allow the contemnor to purge himself of the contempt. *Tucker* v. *Tucker* (1983), 10 Ohio App. 3d 251. Once the contemnor chooses to comply with the court's order, the purpose of the sanction is achieved and the sanction is discontinued.[8]

A sanction for criminal contempt, by contrast,[9] is a punishment for past refusal to obey a court order. *Schrader* v. *Huff* (1983), 8 Ohio App. 3d 111. No coercive element is present. "Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court." *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201, 205 [15 O.O.3d 221].

The distinction between civil and

---

[8] Thus, a civil contemnor is said to "carry the keys of his prison in his own pocket." *Brown, supra,* at 253, citing *In re Nevitt* (C.A. 8, 1902), 117 F. 448.

[9] It has been observed, however, that

some conduct may amount to both civil and criminal contempt. See *Brown, supra,* at 253, citing *United States* v. *United Mine Workers* (1947), 330 U.S. 258 (willful violation of restraining order).

criminal contempt is particularly important in the case at bar, because appellant has raised absence of intent as a defense. It has been held that in civil contempt cases, the intent of the transgressing party is irrelevant. *Windham Bank* v. *Tomaszczyk* (1971), 27 Ohio St. 2d 55 [56 O.O.2d 31]; *Pedone* v. *Pedone* (1983), 11 Ohio App. 3d 164; *Pugh* v. *Pugh* (1984), 15 Ohio St. 3d 136 (*dictum*).

In cases of criminal, indirect contempt, however, the intent to defy the court is an essential element. *East Cleveland* v. *Reed* (1977), 54 Ohio App. 2d 147 [8 O.O.3d 277]; *Vegh* v. *Kish* (1964), 8 Ohio App. 2d 217 [29 O.O.2d 376]; *Taylor* v. *Holmes* (1954), 96 Ohio App. 181 [54 O.O. 241]; see, also, *Univis Lens Co.* v. *United Electrical Radio & Machine Workers* (1949), 86 Ohio App. 241 [41 O.O. 158]; *Beach* v. *Beach* (1946), 79 Ohio App. 397 [35 O.O. 172].[10]

The elements of a criminal contempt charge must be proved beyond a reasonable doubt. *Bd. of Edn.* v. *Hamilton Classroom Teachers Assn.* (1982), 5 Ohio App. 3d 51.

As noted above, appellant herein repeatedly tendered a certified check to the sheriff's department, after his initial failure with the "letter of credit." The sheriff's department repeatedly rejected and rebuffed appellant's efforts to comply with Loc. R. 27. Only after appellant was adjudged to be in contempt of court did the sheriff's department deign to accept appellant's check. Based on these facts, it cannot be said that the holding of contempt was in any way coercive. No court sanction is needed to compel compliance from a party who has been prevented by the complainant in his good-faith efforts to comply. This court can only conclude, therefore, that the purpose of the contempt sanction against appellant was punitive, not coercive. The proceeding was therefore in the nature of criminal contempt rather than civil contempt.

As stated above, intent is an essential element which must be proved beyond a reasonable doubt to sustain a charge of indirect criminal contempt. The trial court expressly found no intent on the part of appellant to disobey the court rule in the case at bar. Consequently, the judgment of the trial court cannot be permitted to stand.

Accordingly, the judgment of the court of common pleas finding appellant in contempt of court is reversed, and final judgment is entered in favor of appellant.

*Judgment reversed.*

PARRINO, P.J., and ANN McMANAMON, J., concur.

---

[10] Within the factual context of the case at bar, see *Schneider* v. *Schneider* (1982), 8 Ohio App. 3d 134, and *Bloomberg* v. *Roach* (1930), 43 Ohio App. 178 (*refusal* to complete purchase, without just cause).