DECISION AND JUDGMENT ENTRY
This appeal is before the court following the April 18, 2000 judgment of the Perrysburg Municipal Court which found appellant, Pamela Kohlhofer, in contempt of court and sentenced her to thirty days in jail and a $250 fine. From this sentence, appellant raises the following assignments of error:
 "1. Whether the trial court erred to the prejudice of Ms. Kohlhofer by finding her guilty of criminal contempt where the state presented no physical evidence, testimony, opening or closing arguments, but instead relied on testimony of an unrelated civil contempt hearing when that testimony was never presented into evidence.
 "2. Whether the trial court erred to the prejudice of Ms. Kohlhofer by finding her in criminal contempt when the state failed to prove that the defendant received actual notice of the terms of the order and that she intended to violate the trial court order."
The following facts are relevant to this appeal. On September 22, 1999, a pretrial was held in Perrysburg Municipal Court on a domestic violence case captioned State of Ohio v. Merle Kohlhofer, case No. CRB9901168. According to the written plea agreement, drafted on that date, the temporary protection order was to remain in effect until January 29, 2000, when Mr. Kohlhofer was to have removed his belongings from the marital residence and returned the keys and garage door opener to appellant. The agreement also provided that the guns in the residence were to be given to the Walbridge Police Department. Stamped in red ink on the agreement it states: "I UNDERSTAND AND APPROVE THIS PLEA AGREEMENT." Directly below the stamp is appellant's signature.
On March 1, 2000, a hearing was held and testimony presented in order to determine the location of the guns which had not been deposited with the Walbridge Police Department. Officer Jim Henry, Walbridge Police Department, testified that on February 18, 2000, pursuant to a facsimile from the court, he went to the Kohlhofer residence to inquire about the guns. At that time, he was told by appellant that the guns had been stolen in October 1999, and she had made a police report (this was later verified). Henry testified that appellant also explained that she found three more guns in the home and had her friend, Mac McDonald, dispose of them.
Appellant next testified that on the date of the plea agreement she was aware that there were guns in the residence. She testified that she was never told by the court or prosecutor that she was to take the guns to the Walbridge Police Department. Appellant stated that she had placed the guns in the garage because she was having some trouble with her daughter and did not want them in the home. Subsequently, she reported the guns stolen.
As to the remaining guns, appellant testified that she had her former employer, Mac McDonald, remove them from her home. Appellant indicated that she was aware that the guns were to be destroyed but that she did not trust the Walbridge Police Department.
Wood County Sheriff's Deputy, Beverly Ridley, testified that on August 31, 1999, she served a domestic violence protection order at the Kohlhofer residence. Ridley testified that she inquired whether there were guns or weapons in the house and that appellant responded that she had moved the guns to a friend's house.
At the conclusion of the hearing, the trial court acknowledged that the agreement does not, per se, order appellant to return the guns herself. However, the trial court found that she was aware that the guns were in her home and she was aware that they were to be destroyed by the Walbridge Police Department. Based on these findings, the trial court threatened that, if appellant failed to give the court more information regarding the location of the guns, it would find her in civil contempt and place her in custody until the guns were produced. The court gave appellant until March 6, 2000.
On that date, appellant failed to appear and, instead, had a facsimile sent from St. Charles Hospital indicating that she had been admitted. The trial court did not find the excuse credible and a bench warrant was issued.
At this point, the case was redesignated as State of Ohio v. PamelaKohlhofer, case No. CRB0000306 and the disposition hearing was set for April 18, 2000. At the hearing, the only witness called was Mac McDonald. McDonald testified that he is part owner in a security business and that appellant is a former employee. He stated that appellant telephoned him and requested that he dispose of some guns in her home. McDonald testified that he went to appellant's home and removed two rifles and one shotgun. He then welded the bridges shut and took them to the landfill. The trial court then asked McDonald for the receipts from the landfill. He indicated that he could not identify the specific receipt because he frequents the landfill.
The trial court then found that appellant was aware that the guns were to be destroyed and that she took contrary action. The court discounted McDonald's testimony because he failed to present a receipt. The court then stated:
 "[I]n my opinion she knows where they [the guns] are. The only thing left for the court to do in this instance is to find her in contempt, and I do so. You're sentenced to 30 days in jail, assessed a fine of $250 in cost."
Appellant then commenced the instant appeal.
Appellant's first and second assignments of error are closely aligned and will be discussed together. In her assignments of error, appellant argues that the trial court erred in finding her in criminal contempt without affording her certain due process rights and proving the alleged contempt beyond a reasonable doubt. The state, conversely, argues that the due process safeguards were not implicated, and therefore not offended, because the trial court found appellant guilty of civil not criminal contempt, and that the contempt was direct, not indirect. Thus, the state contends that the trial court was within its authority to summarily do so.
In determining whether a trial court abused its discretion through a finding of contempt, it must first be determined whether the contempt is civil or criminal. Cleveland v. Ramsey (1988), 56 Ohio App.3d 108, 110.
"Offenses against the dignity or process of the court, where the primary purpose of the punishment imposed is to vindicate the authority of the court by punishing the contemnor for his disobediance [sic], are criminal contempts. Violations which are primarily offenses against the party for whose benefit the order was made, and where the primary purpose of the punishment is remedial or coercive and for the benefit of the complainant, are civil contempts, and the sanction must afford the contemnor the opportunity to purge himself of his contempt." Tucker v.Tucker (1983), 10 Ohio App.3d 251, 252.
Additionally, in determining the rights afforded an alleged contemnor, we must determine whether the alleged contempt was direct or indirect. Direct contempt is misbehavior in the actual or constructive presence of the court while it is within its judicial function, which adversely affects or obstructs the orderly administration of justice. State v.Kilbane (1980), 61 Ohio St.2d 201, 204. Indirect contempt is committed outside the presence of the court and may include disobedience of, or resistance to, a lawful order, judgment, or command of a court or an officer. R.C. 2705.02; Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302.
Unlike civil contempt which may be proven by clear and convincing evidence, criminal contempt must be proven beyond a reasonable doubt.ConTex, Inc. v. Consolidated Technologies, Inc. (1988), 40 Ohio App.3d 94,95; Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. In addition, intent to defy the court is an essential element of indirect criminal contempt. In re Carroll (1985), 28 Ohio App.3d 6, 10. Intent is irrelevant in civil contempt cases. Id.
Because indirect criminal contempt has the potential for incarceration, a defendant is afforded certain due process rights, including the right to call and confront witnesses and the right not to testify against himself or herself. In cases of direct civil contempt, a court may summarily punish contemnors without affording notice and opportunity to be heard. Pheils v. Palmer (Mar. 19, 1999), Lucas App. No. L-98-1092, unreported.
In reviewing the nature of the sanctions imposed upon appellant, we find that, despite the fact that in a prior hearing the court threatened to find appellant in civil contempt, the trial court treated appellant's failure to procure the guns as criminal contempt. The contempt, if any, must also be categorized as indirect because it was committed outside the presence of the court. The trial court's April 18, 2000 judgment entry imposing a jail term and fine is not conditional; rather, it is apparent that the sanction was imposed to vindicate the authority of the court.
Accordingly, because we have found that appellant was found in indirect criminal contempt, appellant's guilt was required to be proven beyond a reasonable doubt. Upon review of the hearing transcripts we find that the state did not meet its burden of proof. At the April 18, 2000 hearing, the state presented no witness or other evidence in order to prove that appellant intentionally defied the court's order.[1] We therefore find appellant's first and second assignments of error well-taken.
The judgment of the Perrysburg Municipal Court is reversed and the cause is remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
 ________________________ Peter M. Handwork, JUDGE
Richard W. Knepper, J. and Mark L. Pietrykowski, P.J. CONCUR.
[1] Looking at the testimony presented at the March 1, 2000 hearing, we find that competent credible evidence was presented which would support a finding of civil contempt, not criminal.