[Cite as *Kachmar v. Kachmar*, 2014-Ohio-652.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| FRANCES KACHMAR, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 12 MA 179 |
| V. | ) | |
| | ) | OPINION |
| STEPHEN KACHMAR, JR., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas, Domestic Relations Division of
Mahoning County, Ohio
Case No.05DR575

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Attorney Matthew Giannini
1040 South Commons Place, Suite 200
Youngstown, Ohio 44514

For Defendant-Appellant     Attorney Daniel Keating
170 Monroe, NW
Warren, Ohio 44483

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: February 21, 2014

DONOFRIO, J.

{¶1} Defendant-appellant Stephen Kachmar Jr. appeals the decision of the Mahoning County Common Pleas Court, Domestic Relations Division, finding him in contempt of court and sentencing him to 30 days in jail.

{¶2} After nearly 32 years of marriage, Stephen and plaintiff-appellee Frances Kachmar separated and Frances filed for divorce. All of their children were emancipated, so the only issues left for resolution were an equitable division of the marital property, spousal support, and attorney fees. After initially reaching a settlement agreement, Stephen took issue with his Social Security benefits being considered when making the property division and pressed for a full trial despite there remaining a substantial agreement on most issues.

{¶3} In the final decree, the trial court awarded Frances 60% of the marital assets. Of particular relevance to the present appeal, the court awarded Frances the Pontiac Grand Am and ordered that the other three vehicles be sold. In a subsequent April 13, 2009 judgment entry, the trial court ordered Stephen to pay Frances $3,600.00 in attorney fees. The court found that the amount of attorney fees was "necessary and reasonable under the facts and the totality of the circumstances in this case," and that they were "necessitated as a direct result of Defendant's [Stephen's] refusal to negotiate in good faith in lieu of the litigation of unmeritorious issues in the proceedings conducted on 12/27/07, 12/28/07 and the preparation of Findings of Fact and Conclusions of Law resulting therefrom."

{¶4} Stephen appealed the final decree of divorce, including the subsequent award of attorney fees, to this court. *Kachmar v. Kachmar*, 7th Dist. No. 08 MA 90, 2010-Ohio-1311. We found two of Stephen's assignments of error with merit in part concerning the trial court's division of marital property. We found that the trial court had erred in ordering Stephen to name Frances as a beneficiary of an unnamed life insurance policy the existence of which was not supported by the record and that the trial court abused its discretion by using inconsistent dates for the valuation of marital property. This court affirmed the trial court's judgment in all other respects, including the award of attorney fees. The trial court's disposition of the parties' vehicles was

not an issue in the appeal and that part of the court's decree was left undisturbed.

**{¶5}** On May 2, 2011, Frances filed a motion to show cause claiming, among other things, that Stephen had failed to pay her attorney fees and failed to deliver the cars to the auctioneer. The trial court held a hearing on the motion on December 21, 2011. On April 16, 2012, the trial court issued findings of fact and conclusions of law. The court found Stephen in contempt for failing to pay the attorney fees, but suspended any jail sentence giving him until a compliance hearing scheduled for June 1, 2012, to purge the contempt finding. Concerning the cars, the court noted that Stephen had previously indicated to the court that the final decree had misidentified one of the vehicles by incorrectly listing the year it was manufactured. Apparently, the auctioneer was unsuccessful in making arrangements with Stephen to get the cars and had received a call from an unknown person telling him that the final decree was in error. Nonetheless, the court concluded that this did not rise to the level of a willful violation of the court's order. The court gave Stephen 14 days to make arrangements with the auctioneer to sell the three vehicles, this time listing them by make and model without any reference to the year.

**{¶6}** The compliance hearing was ultimately rescheduled and held on September 21, 2012. At that hearing, Frances' counsel indicated that Stephen had paid only approximately 50% of the attorney fees. Stephen professed his inability to pay the remaining attorney fees because he had been injured and was not able to work full-time. However, he also claimed to have a transcript where Frances' counsel stated that he charged $100 per hour, rather than the $200 per hour upon which the trial court had based its award of attorney fees. According to his calculations using the lower per hour figure, Stephen contended Frances' attorney had been paid in full. As for the vehicles, he testified that he contacted the auctioneer and resurrected his argument that the divorce decree incorrectly identified the year of the vehicles. At the end of the hearing, the court found Stephen in contempt of court and sentenced him to jail until he complied with the court's order to transfer the vehicles and additionally sentenced him to a definite term of 30 days in jail for failing to pay the remaining

attorney fees.

**{¶7}** On September 24, 2012, Stephen's counsel contemporaneously filed a motion for a stay of execution of the jail sentence pending appeal. The trial court granted the motion on September 26, 2012 and ordered Stephen released from jail.

**{¶8}** Initially, it should be noted that Frances has not filed a brief in this matter. Therefore, we may accept Stephen's statement of the facts and issues as correct and reverse the judgment if Stephen's brief reasonably appears to sustain such action. App.R. 18(C).

**{¶9}** Stephen's sole assignment of error states:

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SENTENCING THE DEFENDANT TO A TERM OF IMPRISONMENT FOR CONTEMPT OF COURT.

**{¶10}** An appellate court's standard of review of a trial court's contempt finding is abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991). An abuse of discretion exists if the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶11}** Stephen presents two sub-arguments under this sole assignment of error – one directed at the award of attorney fees and the other to the vehicles. First, he argues that he was financially unable to pay the remaining attorney fees and that the trial court erred in sentencing him to a definite term in jail absent an express finding that he intentionally and willfully violated the court's order in that regard.

**{¶12}** Concerning Stephen's argument that he is financially unable to fully pay the award of attorney's fees, "[i]t has long been held that in a contempt proceeding, inability to pay is a defense and the burden of proving the inability is on the party subject to the contempt order." *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 514, 979 N.E.2d 297, ¶ 20, citing *State ex rel. Cook v. Cook,* 66 Ohio St. 566, 570, 64 N.E. 567 (1902). "The order of the trial court fixing the amount to be paid and

a party's failure to comply with that order serve as prima facie evidence of contempt." *Id.* It is not unreasonable to place the burden of showing the inability to pay on the party charged with contempt because their financial condition and ability to pay are peculiarly within their own knowledge. *Id.*

**{¶13}** Stephen did testify that he had been on sick leave for six weeks which had reduced his salary by 50%. (Tr. 3.) After that sick leave, he testified that he had another, non-work-related injury involving a torn rotator cuff which has caused him pain and required him to take days off from work. (Tr. 3, 5.)

**{¶14}** However, a complete review of the September 21, 2012 contempt hearing transcript reveals that Stephen failed to meet his burden to prove his inability to pay. At the beginning and again at the end of his argument before the trial court concerning his alleged inability to pay, Stephen once more argued that Frances' attorney only charged $100 per hour rather than the $200 per hour upon which the trial court based its award of attorney fees. (Tr. 2, 6.) Given his calculations, Stephen argued that the $2,000 he had already paid to Frances' attorney constituted complete payment of the attorney fees she incurred. (Tr. 6.)

**{¶15}** Stephen's renewed argument concerning the propriety of the award of attorney fees certainly could have been viewed by the trial court as calling into question his credibility as it related to his claim of being unable to pay the award. In assessing a defense of an alleged inability to pay, this court has recognized that the trial court is in the best position to evaluate the credibility of the alleged contemnor in that regard and this court will not substitute its judgment for that of the trial court in such a situation. *Anderson v. Anderson*, 7th Dist. No. 96 CO 21, 1998 WL 841068, *4 (Dec. 1, 1998).

**{¶16}** We next turn to Stephen's contention that the trial court erred in sentencing him to a definite term in jail absent an express finding that he intentionally and willfully violated the court's order. Stephen has not cited any statutory or case law that requires such an express finding. R.C. 2705.05, which governs penalties for contempt, provides:

(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both[.]

{¶17} A review of R.C. 2705.05 reveals no requirement that the trial court make an express finding that the contemnor intentionally and willfully violated the court's order as a prerequisite to sentencing the contemnor to a term of an imprisonment. Nor can such a requirement be gleaned from case law.

{¶18} Contempt has been variously classified as either direct or indirect, criminal or civil. *In re Carroll*, 28 Ohio App.3d 6, 8, 501 N.E.2d 1204 (8th Dist.1985). Indirect contempt of court "is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice." *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946). R.C. 2705.02, which outlines those acts that are in indirect contempt of court, provides in relevant part: "[a] person guilty of any of the following acts may be punished as for a contempt: * * * (A) [d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer [.]"

{¶19} Criminal contempt is generally characterized by an unconditional prison sentence that operates not as a coercive remedy but as punishment for the completed act of disobedience and to vindicate the court's authority. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253-254, 416 N.E.2d 610 (1980). In this instance, the trial court sentenced Stephen to 30 days in jail for his failure to pay the attorney fees as ordered. Thus, this appeal involves indirect criminal contempt.

{¶20} An action for indirect criminal contempt must be proven beyond a

reasonable doubt. *Midland Steel Prods. Co. v. U.A.W. Local 486* (1991), 61 Ohio St.3d 121, 127, 573 N.E.2d 98. Intent to defy the court is an essential element of indirect criminal contempt, *Id.; In re Carroll*, 28 Ohio App.3d 6, 10, 501 N.E.2d 1204 (8th Dist.1985). However, Stephen has not cited any case law that mandates that the trial court make an *express* finding of intent. Indeed, intent may be inferred from the totality of the circumstances. *See In re Purola*, 73 Ohio App.3d at 313, 596 N.E.2d 1140 (3d Dist.1991); *see also State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001). The trial court certainly could have inferred Stephen's intent to violate its order from his renewed arguments at the contempt hearing concerning the propriety of the award of attorney fees itself. Nevertheless, in this instance, the trial court was not required to make an *express* finding that Stephen intentionally and willfully violated the court's order in order to sentence him to jail for contempt.

**{¶21}** Stephen's second sub-argument under this sole assignment of error is that the trial court's sentencing him to jail over the vehicles violated his due process rights of notice and opportunity to be heard because the court had previously found him not in contempt on that issue.

**{¶22}** Following the first show cause hearing, the trial court determined that Stephen had not willfully violated the court's order concerning the transfer of the vehicles to the auctioneer, but did give 14 days to make arrangements with the auctioneer to get the vehicles transferred so that they could be sold. Consequently, Stephen argues he was denied due process rights of notice and an opportunity to be heard when the trial court sentenced him to a "term of imprisonment" following the September 21, 2012 compliance hearing.

**{¶23}** Stephen's argument misconstrues the import of the trial court's different entries in this case. At the initial December 21, 2011 show cause hearing, testimony was taken and arguments heard on the issue of whether Stephen had complied with the court's final decree concerning the transfer of the vehicles to the auctioneer. While the trial court did not cite Stephen for noncompliance in that regard in its findings of fact and conclusions of law issued on April 16, 2012, following the

hearing, the trial court did give Stephen 14 days to make arrangements with the auctioneer to sell the vehicles. Thus, he had an opportunity to be heard on the issue at the December 21, 2011 show cause hearing and had notice from the April 16, 2012 findings of fact and conclusions of law. Consequently, under the facts and circumstances of this case, Stephen was afforded due process. Moreover, contrary to Stephen's assertion, the trial court did not sentence him to a "term of imprisonment" for his failure to transfer the vehicles. Rather, it sentenced him to jail until he purged himself from the contempt.

**{¶24}** In sum, Stephen did not meet his burden to prove his defense of inability to pay the award of attorney fees and the trial court was not required to make an express finding that he had intentionally and willfully failed to pay the attorney fees as a predicate to a contempt finding for his failure to do so. Additionally, Stephen was afforded due process on the trial court's contempt finding concerning the vehicles because there was a hearing at which that issue was litigated and he had notice when the trial court gave him 14 days in its findings of fact and conclusions of law to comply with the court's order. Consequently, the trial court did not abuse its discretion in finding Stephen in contempt.

**{¶25}** Accordingly, Stephen's sole assignment of error is without merit.

**{¶26}** The judgment of the trial court is affirmed.

Waite, J., concurs.

DeGenaro, P.J., concurs.