[Cite as *Erter v. Erter*, 2014-Ohio-1882.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY


LISA MARIE MADRID ERTER,

    PLAINTIFF-APPELLANT,           CASE NO.  8-13-16

    v.

GREGORY SCOTT ERTER,           O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Logan County Family Court
Domestic Relations
Trial Court No. DR07-06-140

Judgment Affirmed

Date of Decision:   May 5, 2014


APPEARANCES:

    *Jay M. Lopez* for Appellant

    *Kirk D. Ellis*  for Appellee

**SHAW, J.**

{¶1} Plaintiff-appellant Lisa Marie Madrid f.k.a. Erter ("Lisa") appeals the August 12, 2013 judgment of the Logan County Common Pleas Court, Family Court-Domestic Relations Division, denying her motion for citation in contempt against her former husband, defendant-appellee Gregory Scott Erter ("Greg"). Lisa specifically argues that pursuant to the separation agreement incorporated in the parties' final divorce decree she was entitled to receive $51,000.00 plus interest from Greg's 401(K) plan, and that while Greg's 401(K) account was split and she was allocated $51,000.00 on April 28, 2008, by the time she received the money on December 1, 2008, she only received $29,639.02 due to market losses.

{¶2} The facts relevant to this appeal are as follows. Lisa and Greg were married June 28, 2003. On June 29, 2007, Lisa filed for divorce, alleging, *inter alia*, that the parties were incompatible.

{¶3} On July 2, 2008, a judgment entry was filed wherein the court found that the parties were incompatible, entitling Lisa to a divorce. Incorporated into the judgment entry was a separation agreement, which stated, in pertinent part,

> **EMPLOYMENT BENEFITS: Each party shall retain exclusive ownership, free and clear of any claims of the other, of any interest either party may have in * * * 401-K plans * * * except Wife shall also receive as marital property rights, pursuant to Qualified Domestic Relations Orders, the sum of $51,000.00 together with interest thereon from 04/28/08 of Husband's interest/assets/benefits in the 401-K Plan sponsored by his**

**employer, EMI Corp. \* \* \* Wife shall be responsible for all tax liabilities incurred as a result of cashing in her portion of Husband's 401-K.**

(Doc. 61).

**{¶4}** On July 3, 2008, a Qualified Domestic Relations Order ("QDRO") was filed. (Doc. 62). The QDRO was amended twice, once on October 27, 2008, and the second and final time on November 14, 2008. (Docs. 73, 78). The final amended QDRO read, in pertinent part,

**2. The amount to be paid to the Alternate Payee [Lisa] from the accounts of the Participant [Greg] in the Plan shall be $51,000.00, plus interest from 04/28/08, such amount hereinafter referred to as the "Transferred Amount."**

**\* \* \***

**4. \* \* \* If the Transferred Amount is in excess of $3,500.00, the Transferred Amount shall be credited to an account in the name of Alternate Payee in which she shall be immediately 100% vested and invested under the terms of the plan.**

(Doc. 78).

**{¶5}** Before the final judgment entry had been filed, and before the final amended QDRO had been filed, on April 28, 2008, $51,000 was taken out of Greg's 401(K) account and put into an account set up for Lisa. Due to the amendments to the QDRO, Lisa was not able to access the money that was in the account set up for her until December 1, 2008. When Lisa received the money, the account had dropped significantly to $29,639.02.

{¶6} On December 31, 2008, Lisa filed a motion for citation in contempt and lump sum judgment, contending, *inter alia*, that Greg "fail[ed] to properly invest the funds in his 401(K) account which resulted in a substantial decrease in said account and ultimately insufficient funds * * *."[1] (Doc. 87). As support, Lisa argued that "[t]he substantial loss in the account could have been avoided had the Defendant moved and/or transferred the funds to more secure and lower risk investments within the 401(K)." (*Id.*) On February 17, 2009, Greg filed a response opposing Lisa's contempt motion.

{¶7} On February 17, 2009, Greg filed a "Motion for Finding in Contempt" alleging that Lisa "wrongfully damaged, destroyed, or converted to her own personal use several items of real and personal property belonging to [Greg]." (Doc. 97).

{¶8} On October 26, 2009, a hearing was held on the pending contempt motions, dealing primarily with issues that are not the subject of this appeal. A second hearing was held on March 12, 2010, which dealt primarily with the issue that is subject to this appeal.

{¶9} At that March 12, 2010, hearing, Greg testified that it was his understanding that from the divorce decree he was supposed to give Lisa the sum of $51,000.00 plus interest from his 401(K). (Tr. at 15). Greg testified that his

---

[1] There were also multiple other issues in the motion for citation in contempt but none of those are the subject of this appeal, therefore we decline to address them.

company did, in fact, transfer $51,000.00 plus interest to Lisa according to the order. (Tr. at 15). In addition, Greg testified that since his 401(K) plan's inception, roughly twenty-five years prior, he had not changed how the funds were allocated as far as investments, and he did not change those investments prior to the money being transferred to an account set up for Lisa. (Tr. at 14).

{¶10} Gerald Burkhart, who was the Supervisor of Planned Document and Special Services for the company that dealt with Greg's 401(K), testified via telephone at the hearing. Burkhart testified that his company "interpreted [the court's order] to be 51 thousand dollars, amount to be allocated into an account for the alternate payee. And then interest earned on that amount from April 28 until the date was segregated into the account for the alternate payee." (Tr. at 33). Burkhart also testified that the account for Lisa was set up "based on the initial dollars instructed from the orders." (*Id.*)

{¶11} In order to get further clarification, Cheryl Stienhard, who was also involved in the administration of Greg's 401(K) plan, also testified. Stienhard testified that she was the "manager over the plan administration side of the business" and that she was "also the manager over the trading side of the business." (Tr. at 53). Stienhard testified that the amount put into an account for Lisa was originally $51,115.41. (Tr. at 54). Stienhard further testified that while the QDRO indicated that Lisa was to receive $51,000.00 plus interest, interest

could be negative, as interest is lumped together with earnings. (Tr. at 54). Stienhard testified that whether there were gains *or* losses in the account, they were classified as "earnings" on the money and Lisa was entitled to either. (Tr. at 55).

{¶12} At the conclusion of the hearing, the parties elected to submit written closing arguments. Both Greg and Lisa filed their written closing arguments on July 6, 2010.

{¶13} After the closing arguments were filed, no action was taken in this case until April 3, 2013, at which time Lisa filed a request for a hearing to address a proposed judgment entry Greg's attorney had submitted. (Doc. 155). A hearing was then held May 31, 2013. (Doc. 157).

{¶14} On August 12, 2013, a journal entry was filed addressing the issues of the parties that were pending.[2] The trial court held the following regarding the 401(K) issue.

> **With regards to the 401(K) distribution issue, the Court finds Defendant's argument to be persuasive and therefore denies Plaintiff's requests for additional funds. Specifically the Court finds that the final divorce decree states that Plaintiff was to receive "… the sum [of] $51,000.00 together with interest thereon from 4/28/08 …" * * * The parties submitted a joint exhibit (#1) clearly showing that Plaintiff was allocated $51,000.00 as of 04/28/08. Her own separate account was set up as of that date and brought forward to the actual distribution**

---

[2] The only indication of the reason for delay between the submission of closing arguments in July of 2010 to the final entry in August of 2013 was the trial court's statement that "[a]dditional conferences were held between the Court and counsel in an effort to finalize this case.

**date in December of 2008. Plaintiff argues she should have been insulated from any losses in the market because of the following language from the final decree: "…Together with interest thereon." However, witnesses from the company managing the 401K account clearly explained during their telephonic testimony that "interest can be negative" and that Plaintiff was subject to gains and losses on the account (just as Defendant was). Unfortunately, there were many substantial losses in the market over that period of time. \* \* \***

(Doc. 159). The court thus denied Lisa's motion requesting that Greg be found in contempt. (*Id.*)

{¶15} It is from this judgment that Lisa appeals, asserting the following assignment of error for our review

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT $51,000.00 PLUS INTEREST FROM DEFENDANT'S 401(K).**

{¶16} In her assignment of error, Lisa contends that the trial court erred in in failing to award her $51,000 plus interest from Greg's 401(K). Specifically, Lisa argues that the trial court erred in relying on testimony of Greg's 401(K) plan administrators Gerald Burkhart and Cheryl Stienhard.

{¶17} At the outset, we would note that while Lisa argues that the trial court erred in failing to award her more money, she is appealing from a judgment denying her motion for a citation of contempt of Greg wherein she claimed, *inter alia*, that Greg improperly invested the money in his 401(K) resulting in substantial losses. An appellate court's standard of review of a trial court's

contempt finding is whether the trial court abused its discretion. *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69, 75 (1991); *Kachmar v. Kachmar*, 7th Dist. Mahoning No. 12 MA 179, 2014-Ohio-652, ¶ 10. An abuse of discretion exists if the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶18} In this case, testimony revealed that Greg's 401(K) account was split on April 28, 2008 as was required by the separation agreement incorporated in the final divorce decree. However, it is undisputed that Lisa was unable to access those funds that were split from Greg's account until December 1, 2008, as the QDRO had to be processed and approved by the company administering the 401(K). Testimony revealed that Greg did not at any time prior to the split of the funds in his 401(K) attempt to change how the money was invested. Unfortunately, the account set up for Lisa lost a substantial amount of money.

{¶19} Lisa contends on appeal that a more literal interpretation of the separation agreement incorporated into the final divorce decree should be taken, requiring her to specifically receive $51,000 in funds at whatever time she was able to withdraw funds from the account rather than merely Greg to have transferred at least $51,000 into the account at the inception of its creation. However, testimony from Cheryl Stienhard specifically revealed that the company administering the 401(K) considered all earnings in the account to be lumped in

with interest, so that any gains or losses on the account set up for Lisa would have been Lisa's. Where the only testimony revealed that gains and losses were treated as interest by the company and the interest could therefore be negative, we cannot find that the trial court abused its discretion in denying Lisa's motion for contempt. Furthermore, we would note that the QDRO also contained language that if the transferred amount was in excess of $3,500.00, the amount was to be credited to an account in Lisa's name, invested under the terms of the plan, which is exactly what happened. Thus we fail to see how Greg could be found in contempt of the court's order. Accordingly, Lisa's assignment of error is overruled.

{¶20} For the foregoing reasons the judgment of the Logan County Common Pleas Court, Family Court-Domestic Relations Division, is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**